1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

CASSAUNDRA MAXWELL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

AMAZON.COM, INC., a Delaware corporation, and AMAZON ADVERTISING, LLC, a Delaware limited liability company,

Defendants.

No. 2:25-cv-261

**COMPLAINT—CLASS ACTION**

JURY DEMAND

CLASS ACTION COMPLAINT - 1

Plaintiff Cassaundra Maxwell, individually and on behalf of all others similarly situated ("Plaintiff"), brings this Class Action Complaint against Defendants Amazon.com, Inc. and Amazon Advertising, LLC ("Amazon" or "Defendants"), seeking monetary damages, restitution, and/or injunctive relief for the proposed Class, as defined below. The following allegations are made upon information and belief derived from, among other things, the investigation of counsel, public sources, and the facts and circumstances as currently known. Because only Amazon has knowledge of all information underlying its misconduct, Plaintiff reserves the right to supplement these allegations with additional facts and injuries as they are discovered.

## I.    INTRODUCTION

1.    Hundreds of millions of Americans carry their cell phones with them wherever they go. Having harvested the information about private moments and movements that these cell phones contain, Amazon has monetized this information in a triumph of profit over privacy.

2.    On information and belief, Amazon has harvested the location data of tens of millions of Americans without their consent.

3.    Amazon unlawfully obtained this location data without consumers' knowledge by licensing Amazon's software development kit ("SDK") to a variety of mobile applications.

4.    SDKs provide software development tools (such as a compiler, code libraries, and debuggers) that enable software developers to build applications in a more quick and standardized way than would otherwise be practicable.[1]

---

[1] *What is an SDK?*, Amazon Web Services, https://aws.amazon.com/what-is/sdk, last accessed Feb. 10, 2025.

CLASS ACTION COMPLAINT - 2

5.      The Amazon Ads SDK operates in the background of many third-party applications, thereby enabling Amazon to collect sensitive location data directly from consumers' mobile devices.

6.      Having harvested that data, Amazon then used it for profit—both for its own targeted advertising methods and by selling the data to others looking to help their own bottom line.

7.      Amazon's practice of unlawfully tracking, collecting, and profiting from mobile users' location data has violated federal and state law and constitutes unjust enrichment.

8.      Plaintiff is bringing this lawsuit on behalf of herself and other similarly situated to recover damages, injunctive relief, and restitution.

## II.    PARTIES

9.      Plaintiff Cassaundra Maxwell is a resident of Lake Stevens, Washington, where she intends to remain.

10.     Defendant Amazon.com, Inc. is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109.

11.     Defendant Amazon Advertising, LLC is a Delaware limited liability company with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109.

12.     Defendant Amazon Advertising, LLC is a subsidiary company of Defendant Amazon.com, Inc. Throughout this complaint both Amazon.com, Inc. and Amazon Advertising, LLC are referred to collectively as "Amazon."

## III.    JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because

CLASS ACTION COMPLAINT - 3

Plaintiff's federal claims pursuant to 18 U.S.C. §§ 2510, *et seq.*, 18 U.S.C. §§ 2701, *et seq.*, and 18 U.S.C. § 1030, *et seq.* arise under the laws of the United States.

14.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

15.     This Court has personal jurisdiction over Amazon because it is authorized to and regularly conducts business in the State of Washington. Amazon sells, markets, and advertises its products and services to Plaintiff and Class Members located in the State of Washington and, therefore, has sufficient minimum contacts to render the exercise of jurisdiction by this Court proper and necessary.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Amazon's principal place of business is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

### IV.    FACTUAL ALLEGATIONS

**A.    Amazon Developed Software to Collect Millions of Consumers' Location Data.**

17.     Amazon is a multinational online retail and technology company that conducts business throughout the United States.

18.     Amazon is one of the largest companies in the world. The company is ranked among the five largest publicly traded companies, by revenue and market capitalization.[2]

19.     Amazon's vast business dealings extend far beyond its online retail services. As relevant here, Amazon operates its own advertising network: Amazon Ads.

---

[2] Luca Ventura, *World's Largest Companies in 2024*, Global Finance (Sept. 14, 2024), https://gfmag.com/data/biggest-company-in-the-world/.

CLASS ACTION COMPLAINT - 4

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

20.     According to the company, Amazon Ads "offers a range of products and solutions that can help businesses achieve their advertising goals."[3] And with Amazon's "insights, reach, and premium entertainment properties, you can connect with the right audiences in the right places, both on Amazon and wherever they spend time."[4]

21.     One the products offered by Amazon Ads is its software development kit or "SDK."

22.     An SDK is "a set of platform-specific building tools for developers" that "put[s] everything you need to develop and run software in one place."[5] Developers use SDKs for mobile app development, web development, and cloud computing, among other uses.[6] Advertising SDKs "perform various advertising related functions such as mediation, measurement, attribution, and others."[7]

23.     Thousands of developers have integrated the Amazon Ads SDK into their mobile apps. On information and belief, Amazon Ads is embedded in more than 10,000 Android and iPhone mobile apps, collectively.

24.     On information and belief, these apps include Weather (The Weather Channel app), Speedtest by Ookla, OfferUp, Truecaller: Caller ID Blocker, Zedge, Wallpapers & Ringtones, Rakuten Viber Messenger, My Talking Angela, My Talking Tom, Happy Color by Numbers Game, aquapark.io, and Paper.io 2.

---

[3] *FAQs*, Amazon Ads, https://advertising.amazon.com/about-us (last accessed Feb. 6, 2025).
[4] *Id.*
[5] *What is an SDK?*, Amazon Web Services, https://aws.amazon.com/what-is/sdk/ (last accessed Feb. 6, 2025).
[6] *Id.*
[7] Mobile App SDKs Market Share Report May - 2024, Pixalate, https://www.pixalate.com/hubfs/Reports_and_Documents/Mobile%20Reports/2024/Mobile%20SDK%20Report/Pixalates%20Mobile%20SDK%20Report%20-%20Android%20-%20May%202024.pdf (last accessed Feb. 10, 2025).

CLASS ACTION COMPLAINT - 5

25. These apps have been downloaded by millions of mobile users.

26. In North America, Amazon Ads has an estimated 84% market share in the Google Play Store and an estimated 74% market share in the Apple App Store based on impression volume.[8]

27. The Amazon Ads SDK has another purpose that the company conceals from the public: harvesting consumers' data. Amazon designed its SDK to collect a vast amount of individual data points from the location of a user's mobile phone.

**B.    Amazon Reaps What It Sows by Harvesting and Profiting from Location Data.**

28. While the Amazon Ads SDK runs in the background of thousands of mobile apps, it covertly withdraws sensitive location data and other data that has been and/or can be readily de-anonymized.

29. On information and belief, once installed in a mobile app, the Amazon Ads SDK harvests several types of data, including, but not limited to:

   A.    Time-stamped latitude and longitude geolocation coordinates from consumers' mobile devices; and

   B.    Mobile advertising IDs ("MAIDs")[9] (collectively "Mobile Device Data").

---

[8] *Id.*

[9] Unlike internet browsers, mobile apps do not use cookies to collect identifiers. Thus, mobile advertising IDs are unique and "resettable identifier[s] assigned to each mobile device" that allow advertisers to track "interactions with their content." Nick Chasinov, Mobile Advertising ID (MAID) Guide, *Tekniks*, https://www.tekniks.com/blog/capture-mobile-advertising-ids-maids/ (last accessed Feb. 10, 2025).

CLASS ACTION COMPLAINT - 6

30.    Even in instances where advertising identifiers are not present, Amazon Ads utilizes "billions of unique, proprietary signals to help you reach relevant audiences on Amazon and beyond."[10]

31.    Unbeknownst to mobile users like Plaintiff and the Class Members, these proprietary signals appear to rely on the personal geolocation data that the Amazon Ads SDK is able to surreptitiously obtain and monetize.

32.    Mobile users may agree to share their location while using certain apps, such as a weather app, where location data provides the user with the prompt and accurate information they're seeking. But that user has no idea that Amazon, through the Amazon Ads SDK, will have equal access to sensitive geolocation data that it can then exfiltrate and monetize.

33.    Location data provides insights into the diverse and intimate aspects of an individual's health, such as "visiting a cancer clinic; health behaviors, such as going to the gym or eating fast food; social detriments of health, such as by indicating what neighborhoods and environments a person lives and works in; and social networks that may influence health, such as close contact during the COVID 19 pandemic."[11]

34.    Access to precise location data is especially concerning given that such data is practically impossible to fully anonymize, even where unique identifiers are used instead of names.[12]

---

[10] Audiences, *Amazon Ads*, https://advertising.amazon.com/insights-and-planning/audiences (last access Feb. 10, 2025).

[11] Anya E.R. Prince, Location Data Are Revealing Health Information, *The Regulatory Review*, https://www.theregreview.org/2021/08/19/prince-location-data/. (Aug. 19, 2021).

[12] Stacey Gray, A Closer Look at Location Data: Privacy and Pandemics, *Future of Privacy Reform*, https://fpf.org/blog/a-closer-look-at-location-data-privacy-and-pandemics/ (Mar. 25, 2020).

CLASS ACTION COMPLAINT - 7

**C.      Amazon's Lack of Privacy Disclosures.**

35.      Amazon claims to have "a longstanding commitment to privacy and data security."[13] However, mobile users of third-party apps receive no notice that the Amazon Ads SDK is running in the background and thereby receiving equal access to the user's location data. Nor is it readily apparent within the various mobile apps that the Amazon Ads SDK may be embedded within.

36.      When a mobile application embedded with the Amazon Ads SDK requests location permission, users are not provided with an opportunity to grant or deny access to Amazon as well. Nor does Amazon inform users that it is harvesting and selling their highly personal data.

**D.      Plaintiff Maxwell's Experience.**

37.      Ms. Maxwell uses the Weather Channel and OfferUp apps on her phone—apps that both have embedded the Amazon Ads SDK.

38.      On information and belief, the Amazon Ads SDK collected personal data, including location data from Ms. Maxwell's phone, without her knowledge or consent. Amazon then relied on this data for its own personal gain and/or to sell her data to others.

39.      Ms. Maxwell was completely unaware that the Amazon Ads SDK was embedded within the apps she uses on her phone. She was equally unaware that that the Amazon Ads SDK was harvesting her data and sending to Amazon for Amazon's own profit-seeking purposes.

---

[13] Advertising, Data Protection and Privacy, *Amazon Ads*, https://advertising.amazon.com/resources/ad-policy/eu-data-protection-and-privacy (last accessed Feb. 10, 2025).

CLASS ACTION COMPLAINT - 8

## V.    STATUTE OF LIMITATIONS

40.    Amazon did not disclose its practice of data harvesting and selling through its Amazon Ads.

41.    The covert manner in which the Amazon Ads SDK operates in the background of third-party apps obscured from mobile users that they were sharing their location data with Amazon. At no point were mobile users informed that the Amazon Ads SDK might collect and sell their data, let alone given an opportunity to opt out of the process.

42.    Thus, any applicable statute of limitations has been tolled.

## VI.    CLASS ACTION ALLEGATIONS

43.    Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiff seeks certification of the following class (the "Class"):

**All natural persons residing in the United States whose Mobile Device Data was obtained by Defendants through the Amazon Ads SDK.**

44.    Excluded from the Class are Amazon; Amazon's officers, directors, legal representatives, successors, subsidiaries, and assigns; any entity in which Amazon has a controlling interest; and all individuals who make a timely election to be excluded from this proceeding using the proper opt out protocol. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

45.    Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of their claims regarding liability and entitlement to injunctive relief and damages on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

46.    Plaintiff reserves the right to modify or amend the foregoing Class definitions before the Court determines whether certification is appropriate.

CLASS ACTION COMPLAINT - 9

47.     **Numerosity: Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members in a single proceeding is impracticable. While the exact number of Class Members is unknown at this time, as noted above, it has been reported that the Amazon Ads SDK is embedded within thousands of mobile apps that have been downloaded by millions of users.

48.     **Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common questions include:

a.  Whether Amazon engaged in the conduct of collecting location and/or other data;

b.  Whether Plaintiff and Class Members were privy or consented to the collection of their data;

c.  Whether Amazon allowed third parties to access the location and/or other data;

d.  Whether Amazon used the location and/or other data to target Plaintiff and Class Members with advertisements;

e.  Whether Amazon's conduct violates the Federal Wiretap Act and/or Electronic Communications Privacy Act;

f.  Whether Amazon's conduct violates the Computer Fraud and Abuse Act;

g.  Whether Amazon's conduct violates the Stored Communications Act;

h.  Whether Amazon's conduct is a violation of privacy under common law;

i.  How much Amazon profited from its practice; and

j.  Whether Amazon's conduct should be enjoined.

49.     Amazon engaged in a common course of conduct giving rise to the claims advanced by Plaintiff on behalf of themself and all other Class Members. Individual questions, if any, are outnumbered by the overwhelming numerous common questions presented here.

CLASS ACTION COMPLAINT - 10

50.    **Typicality: Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of other Class Members' claims because Plaintiff and Class Members were subjected to the same allegedly unlawful conduct and harmed in the same way. Plaintiff's damages and injuries are akin to those of other Class Members, and Plaintiff seeks relief consistent with the relief of the Class.

51.    **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Amazon to obtain relief for the Class. Plaintiff has no conflict of interest with the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including extensive experience in data breach and privacy litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

52.    **Predominance and Superiority: Federal Rule of Civil Procedure 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Common issues in this litigation also predominate over individual issues because those issues discussed in the above paragraph on commonality are more important to the resolution of this litigation than any individual issues. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Amazon, and thus, individual litigation to redress Amazon's wrongful conduct would be impracticable. Individual litigation by

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

each Class Member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

53.     **Risk of Prosecuting Separate Actions.** This case is appropriate for certification because prosecuting separate actions by individual proposed Class Members would create the risk of inconsistent adjudications and incompatible standards of conduct for Amazon or would be dispositive of the interests of members of the proposed Class.

54.     **Ascertainability.** The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class. Membership can be determined using Amazon's records.

55.     **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Amazon, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive relief appropriate to the Class as a whole. Injunctive relief is necessary to uniformly protect the Class Members' data. Plaintiff seeks prospective injunctive relief as a wholly separate remedy from any monetary relief.

56.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## VII.   CLAIMS FOR RELIEF

### COUNT ONE — VIOLATION OF THE FEDERAL WIRETAP ACT, 18 U.S.C. §§ 2510, *et seq.*

57.     Plaintiff brings this claim on behalf of herself and the nationwide class.

CLASS ACTION COMPLAINT - 12

58.     Plaintiff incorporates the allegations above.

59.     The Federal Wiretap Act ("FWA"), as amended by the Electronic Communications Privacy Act of 1986 ("ECPA"), prohibits the intentional interception, use, or disclosure of any wire, oral, or electronic communication.

60.     Under the FWA, no person may intentionally intercept, endeavor to intercept, or procure "any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). Similarly, it is unlawful for any person to intentionally disclose, or endeavor to disclose, to any other person or to intentionally use, or endeavor to use, the "contents of any wire, oral, or electronic communication, knowing or having reason to know that" the communication was obtained in violation of the FWA. 18 U.S.C. § 2511(1)(c) & (d).

61.     The FWA confers a private right of action for any person whose wire, oral, or electronic communication is intercepted, used, or disclosed in violation of the FWA. 18 U.S.C. § 2520(a).

62.     The FWA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

63.     The FWA defines "electronic communication" as "any transfer of signs, signals, . . . data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).

64.     The FWA defines "electronic, mechanical, or other device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication." 18 U.S.C. § 2510(5).

CLASS ACTION COMPLAINT - 13

65.    The FWA defines "contents," with respect to any covered communication, to include "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

66.    The FWA defines "person" to include "any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

67.    Defendants are each a person as defined in 18 U.S.C. § 2510(6).

68.    The data and transmissions within, to, and from Plaintiff's and Class Members' mobile devices constitute "electronic communications," as defined by 18 U.S.C. § 2510(12), because they are transfers of signals, data, and intelligence transmitted by electromagnetic, photoelectronic or photooptical systems that affect interstate commerce.

69.    As alleged above, through the Amazon Ads SDK, Defendants intercepted, in real time, contemporaneously, and as it was transmitted, the contents of electronic communications transmitted within, to, and from Plaintiff's and Class Members' mobile devices and third-party apps, and diverted those communications to Defendants.

70.    As detailed herein, Plaintiff and Class Members were not aware of and did not consent to Defendants' interception of their electronic communications.

71.    The electronic communications that Defendants intercepted are tied to individuals and are not anonymized because, on information and belief, the Amazon Ads SDK collects app users' mobile device identifiers and other information that app developers provide to Amazon.

72.    Common understanding and experience of how mobile apps function create a reasonable expectation that Defendants would not surreptitiously intercept and divert the electronic communications described above.

CLASS ACTION COMPLAINT - 14

73.    In a further violation of the FWA, defendants have intentionally used or endeavored to use the contents of the electronic communications described above, knowing or having reason to know that the information was obtained through interception in violation of 18 U.S.C. § 2511(1)(a). *See* 18 U.S.C. § 2511(1)(d).

74.    Defendants have used the illicitly obtained contents of these electronic communications to, *inter alia*: (1) personalize advertising recommendations to consumers, thereby obtaining further profits; and (2) strengthen their profitable targeted advertising business.

75.    Consequently, Plaintiff and Class Members have suffered harm and injury due to the interception, disclosures, and/or use of electronic communications containing their private information.

76.    Under 18 U.S.C. § 2520, Plaintiff and Class Members have been damaged by the interception, disclosure, and/or use of their communications in violation of the FWA and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff and Class Members and any profits made by Defendants as a result of these violations or (b) statutory damages for each Class Member of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

77.    Plaintiff and Class Members seek compensatory, injunctive, and equitable relief in an amount to be determined at trial, including an award of reasonable attorneys' fees and costs and punitive or exemplary damages for Defendants' willful violations.

**COUNT TWO — VIOLATION OF THE STORED COMMUNICATIONS ACT, 18 U.S.C. §§ 2701, *et seq.***

78.    Plaintiff brings this claim on behalf of herself and the nationwide class.

79.    Plaintiff incorporates the allegations above.

CLASS ACTION COMPLAINT - 15

80.    The Stored Communications Act ("SCA"), enacted in 1986 as part of the ECPA, creates a civil remedy for those whose stored electronic communications have been obtained by one who "intentionally accesses without authorization" or "intentionally exceeds an authorization to access" a facility through which an electronic communication service ("ECS") is provided. 18 U.S.C. §§ 2701, 2707.

81.    The SCA reflects Congress's judgment that users have a legitimate interest in the confidentiality and privacy of communications in electronic storage and confers a private right of action for individuals who have been harmed by knowing or intentional conduct that is in violation of the SCA. 18 U.S.C. § 2707(a).

82.    "Electronic communication" under the SCA is defined as "any transfer of signs, signals, . . . data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).

83.    "Electronic storage" is defined as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication . . . ." 18 U.S.C. §§ 2510(17) (incorporated by reference in 18 U.S.C. § 2711(1)).

84.    Plaintiff and Class Members, as individuals, and Defendants, as corporations or legal entities, are "persons" within the meaning of 18 U.S.C. § 2510(6), and for purposes of 18 U.S.C. § 2707.

85.    The data transmitted to and from Plaintiff's and Class Members' mobile devices constitute "electronic communications" within the meaning of the SCA. 18 U.S.C. § 2510(12).

CLASS ACTION COMPLAINT - 16

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

86.     As alleged above, Defendants have unlawfully accessed, collected, analyzed, and derived financial benefit from Plaintiff's and Class Members' personal and location data.

87.     Without their knowledge or consent, Plaintiff's and Class Members' data was intentionally intercepted by Defendants.

88.     Without their knowledge or consent, Plaintiff's and Class Members' data was intentionally stored by Defendants.

89.     As detailed herein, Plaintiff and Class Members were not aware of and did not consent to Defendants' interception of their electronic communications.

90.     Defendants violated the SCA, 18 U.S.C. § 2701, by willfully and intentionally accessing Plaintiff's and Class Members' private communications and data stored in app users' mobile phones without authorization or in excess of authorization.

91.     As a result of Defendants' conduct, Plaintiff and Class Members are entitled to all relief set forth in 18 U.S.C. § 2707, including declaratory and equitable relief, compensatory damages measured by actual damages and Defendants' profits, reasonable attorneys' fees and costs, all available statutory relief, and punitive damages as determined by the Court.

## COUNT THREE — VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030, *et seq.*

92.     Plaintiff brings this claim on behalf of herself and the nationwide class.

93.     Plaintiff incorporates the allegations above.

94.     The Computer Fraud and Abuse Act ("CFAA"), enacted in 1986 as part of the ECPA, prohibits the intentional accessing, without authorization or in excess of authorization, of a computer under certain circumstances. 18 U.S.C. § 1030(a).

95.     The CFAA reflects Congress's judgment that users have a legitimate interest in the confidentiality and privacy of information within their computers.

CLASS ACTION COMPLAINT - 17

96. The CFAA provides that it is unlawful to "intentionally access a computer without authorization or exceed[] authorized access, and thereby obtain[] . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(c).

97. Further, the CFAA mandates that it is unlawful to "knowingly and with intent to defraud, access[] a protected computer without authorization or exceed[ing] authorized access" and thereby "further[] the intended fraud and obtain[] anything of value" 18 U.S.C. § 1030(a)(4).

98. Plaintiff and Class Members, as individuals, and Defendants, as corporations or legal entities, are "persons" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(12).

99. A "computer" is defined as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." 18 U.S.C. § 1030(e)(10).

100. "Exceeds authorized access" is defined as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain." 18 U.S.C. § 1030(e)(6).

101. A "protected computer" is defined as "a computer . . . which is used in or affecting interstate or foreign commerce or communication . . . , [or that] has moved in or otherwise affects interstate or foreign commerce." 18 U.S.C. § 1030(e)(2)(B).

102. Plaintiff's and Class Members' mobile devices are created in facilities across the world and utilize GPS, cellular, and Wi-Fi networks to send and receive information and electronic communications across state lines and internationally. As a result, Plaintiff's and Class Members' mobile devices constitute both "computers" and "protected computers" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(1), 18 U.S.C. § 1030(e)(2)(B).

CLASS ACTION COMPLAINT - 18

103.    Defendants' use of the Amazon Ads SDK constitutes access to Plaintiff's and Class Members' mobile devices.

104.    Through the Amazon Ads SDK, Defendants intentionally accessed Plaintiff's and Class Members' protected computers without their authorization or consent, or in a manner that exceeded Plaintiff's and Class Members' authorization, and obtained information therefrom in contravention of the CFAA. 18 U.S.C. § 1030(a)(2)(C).

105.    Defendants' misconduct constitutes a knowing intent to defraud Plaintiff and Class Members of their personal data and to thereby derive financial gain. 18 U.S.C. § 1030(a)(4).

106.    Plaintiff and Class Members have suffered harm and injury due to Defendants' unauthorized access to the communications containing their private and personal information.

107.    A civil action for violation of the CFAA is proper if the conduct involves "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). Because the loss to Plaintiff and Class Members during any one-year period within the relevant timeframe, including the loss of their privacy interest in and control over their personal data, exceeded $5,000 in aggregate, Plaintiff and the Class are entitled to bring this civil action and are entitled to economic damages, compensatory damages, injunctive, equitable, and all available statutory relief, as well as their reasonable attorney's fees and costs and other relief as permitted by the CFAA. 18 U.S.C. § 1030(g).

**COUNT FOUR — VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT, RCW § 19.86,** *et seq.*

108.    Plaintiff brings this claim on behalf of herself and the nationwide class.

109.    Plaintiff incorporates the allegations above.

CLASS ACTION COMPLAINT - 19

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

110.    The Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq.*, provides consumers with a comprehensive procedure for redressing unfair or deceptive business practices.

111.    Washington law recognizes a private right of action to any person injured in her property by an "unfair or deceptive act or practice" pursuant to Wash. Rev. Code. Ann. § 19.86.090.

112.    Amazon is a "[p]erson" as defined by Wash. Rev. Code Ann. § 19.86.010(1).

113.    The CPA deems unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as unlawful.

114.    Amazon advertised, offered, or sold goods or services in Washington and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash. Rev. Code Ann. § 19.86.010(2).

115.    Amazon engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code Ann. § 19.86.020, as described herein.

116.    Amazon's representations and omissions were material because they were likely to deceive reasonable consumers to believe their user and location data would be kept private and protected from unauthorized disclosure.

117.    Amazon acted intentionally, knowingly, and maliciously to violate Washington's CPA, and recklessly disregard Plaintiff's rights with knowledge of the improper collection of and misuse of private user and location data.

118.    Amazon's acts and omissions as alleged herein violate the Washington CPA because they: (1) are unfair or deceptive acts or practices; (2) are committed in the course of Amazon's business; (3) have a pervasive public interest impact and have the potential to deceive a substantial portion of the public; and (4) caused or had capacity to cause injury to Plaintiff and

CLASS ACTION COMPLAINT - 20

Class Members, including hundreds of thousands of Washingtonians affected by Amazon's deceptive business practices.

119.    Defendants' violation of Washington's My Health My Data Act—a statute designed to recognize and protect the fundamental privacy rights of Washingtonians—also constitutes a *per se* violation of the Washington CPA.

120.    Defendants have violated and continue to violate the CPA by covertly harvesting and selling Plaintiff's and Class Members' location data without the consent or knowledge of Plaintiff and Class Members.

121.    Amazon's conduct is a matter of public interest because its activities have led to the unknowing harvesting of potentially millions of individual's personal data.

122.    As a direct and proximate result of Amazon's violations of the CPA, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

123.    Plaintiff has suffered injuries in fact and lost money or property due to Amazon's business acts and practices. Plaintiff's personal data has tangible value. Their personal content is in the possession of third parties who have used and will use it for their own advantage, including financial gains, or was and is being sold for value, making it clear that the person content has tangible value.

124.    The personal data shared with third parties allows that data to be aggregated with other data to identify and target Plaintiff. Accordingly, Plaintiff is at an increased risk of identity theft due to Amazon's practices concerning the harvesting of such data and sharing of data with third parties.

CLASS ACTION COMPLAINT - 21

125.    Through their unlawful, unfair, and deceptive acts and practices, Amazon has unfairly obtained, and continues to unfairly obtain, money from the sale of Plaintiff's and Class Members' data.

126.    Plaintiff seeks all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

## COUNT FIVE — VIOLATION OF THE WASHINGTON MY HEALTH MY DATA ACT, RCW 19.373, *et seq.*

127.    Plaintiff brings this claim on behalf of herself and the nationwide class.

128.    Plaintiff incorporates the allegations above.

129.    Plaintiff's privacy is a fundamental right and essential element of her individual freedom as recognized by Washington law.

130.    Amazon is a "[r]egulated entity" as defined by Wash. Rev. Code. Ann. § 19.373.010(23).

131.    As a natural person who is a resident of Washington, Plaintiff is a "[c]onsumer" as defined by Wash. Rev. Code. Ann. § 19.373.010(7).

132.    Amazon collected Plaintiff's consumer health data, including biometric data and precise location information that could reasonably indicate a consumer's attempt to acquire or receive health services or supplies.

133.    Prior to harvesting and sharing Plaintiff's personal data, Amazon never obtained consent. Nor did Amazon clearly and conspicuously disclose the categories of consumer health data collected or shared; the purpose of the collection or sharing of consumer health data; the categories of entities with whom the consumer health data is shared; and how the consumer can withdraw consent from future collection.

134.    Plaintiff seeks all monetary and non-monetary relief allowed by law.

CLASS ACTION COMPLAINT - 22

## COUNT SIX — INVASION OF PRIVACY – INTRUSION INTO PRIVATE AFFAIRS

135.    Plaintiff brings this claim on behalf of herself and the nationwide class.

136.    Plaintiff incorporates the allegations above.

137.    Plaintiff's and the Class Members location data and other personal data captures sensitive and private information about their daily lives as they frequent medical appointments, pharmacies, places of worship, and the homes of family and friends.

138.    Plaintiff and Class Members reasonably expected that the location data they shared with third-party apps would be protected and secured and would not be disclosed to Amazon or subsequent third-parties looking to buy that data.

139.    Amazon intentionally intruded upon the private affairs and concerns of Plaintiff by improperly accessing and obtaining Plaintiff's location data and using it for improper purposes, including by targeting Plaintiff with advertisements and/or enabling the targeting of Plaintiff with such advertisements.

140.    Amazon intentionally intruded upon the private affairs and concerns of Plaintiff by covertly accessing and harvesting Plaintiff's data while running in the background of third-party mobile apps whose own consent to access the data was entirely distinct from Amazon's ulterior motives.

141.    Amazon's intrusion upon the private affairs and concerns of Plaintiff were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms.

142.    Amazon's conduct is especially offensive and egregious, in that Amazon intruded upon the private affairs and concerns of Plaintiff for its own commercial benefit—to increase its growth and to attract and obtain advertising revenue.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

143.    Plaintiff did not consent to Amazon's intrusion upon her private affairs and concerns. In fact, Plaintiff had no idea that Amazon even had access to her data through certain mobile apps.

144.    Plaintiff suffered actual and concrete injury as a result of Defendants' intrusion upon Plaintiff's private affairs and concerns.

145.    Plaintiff and Class Members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff for the harm to her privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Amazon's invasions of privacy, as well as disgorgement of profits made by Amazon as a result of their intrusion upon Plaintiff's private affairs and concerns.

## COUNT SEVEN — UNJUST ENRICHMENT

146.    Plaintiff brings this claim on behalf of herself and the nationwide class.

147.    Plaintiff incorporates the allegations above.

148.    Plaintiff and Class Members have an interest, both equitable and legal, in their personal data and location data that was collected, withdrawn, and sold by Amazon.

149.    Amazon benefitted from the conferral upon it of location data pertaining to Plaintiff and Class Members and by its ability to retain, use, sell, and profit from that information. Amazon understood these benefits.

150.    Amazon also understood and appreciated that the geolocation data from mobile users of apps with the Amazon Ads SDK was private and personal.

151.    But for Amazon's covert access to and withdrawal of personal location data, that data would not have been obtained by Amazon.

CLASS ACTION COMPLAINT - 24

152.     By using and selling Plaintiff and Class Members' location data, Amazon sold more services and products than it otherwise would have. Amazon was unjustly enriched by profiting from the additional services and products it was able to market, sell, and create to the detriment of Plaintiff and Class Members.

153.     Amazon also benefited through its unjust conduct in the form of profits it gained through the use of Plaintiff and Class Members' data.

154.     It is inequitable for Amazon to retain these benefits.

155.     As a result of Amazon's wrongful conduct as alleged herein, Amazon has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

156.     Amazon's unjust enrichment can be traced to, and resulted directly and proximately from, the conduct alleged herein, including the harvesting, withdrawal, and sale of Plaintiff's and Class Members' sensitive data.

157.     It is unjust for Amazon to retain these wrongfully obtained benefits and such retention of wrongfully obtained monies would violate fundamental principles of justice, equity, and fairness.

158.     The benefit conferred upon, received, and enjoyed by Amazon was not conferred officiously or gratuitously, and it would be inequitable, unfair, and unjust for Amazon to retain the benefit.

159.     Plaintiff has no adequate remedy at law.

160.     Amazon is therefore liable to Plaintiff and Class Members for restitution or disgorgement in the amount of the benefit conferred on Amazon as a result of its wrongful conduct, including the value to Amazon of the personal data that was stolen and the profits Amazon received and is receiving from the use of that information.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## VIII.   PRAYER FOR RELIEF

Plaintiff, individually and on behalf of members of the Class, respectfully requests that the Court enter judgment in Plaintiff's favor and against Amazon, as follows:

161.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's Counsel as Class Counsel;

162.    That the Court grant permanent injunctive relief to prohibit Amazon from continuing to engage in the unlawful acts, omissions, and practices described herein, including prohibiting Amazon from engaging in the wrongful and unlawful acts described herein;

163.    That the Court award Plaintiff and the Class compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

164.    That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Amazon as a result of its unlawful acts, omissions, and practices;

165.    That the Court award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

166.    That Plaintiff be granted the declaratory relief sought herein;

167.    That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

168.    That the Court award pre- and post-judgment interest at the maximum legal rate; and

169.    That the Court grant all such other relief as it deems just and proper.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

## IX.    DEMAND FOR JURY TRIAL

2

Plaintiff demands a jury trial on all claims so triable.

3

RESPECTFULLY SUBMITTED this 10th day of February, 2025.

4

KELLER ROHRBACK L.L.P.

5

6    By:  */s/ Derek W. Loeser*
Derek W. Loeser, WSBA #24274

7    */s/ Cari Campen Laufenberg*
Cari Campen Laufenberg, WSBA #34354

8    1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268

9    Telephone: (206) 623-1900
Facsimile: (206) 623-3384

10   Email: dloeser@kellerrohrback.com
Email: claufenberg@kellerrohrback.com

11

*/s/ Christopher L. Springer*

12   Christopher L. Springer
(*pro hac vice* forthcoming)

13   KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301

14   Santa Barbara, CA 93101
Telephone: (805) 456-1496

15   Facsimile: (805) 456-1497
Email: cspringer@kellerrohrback.com

16

***Attorneys for Plaintiff Cassaundra Maxwell***

17

18

19

20

21

22

23

24

25

26

CLASS ACTION COMPLAINT - 27

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384